# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **STEVE ALLEN BRADEN,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:11-cv-01006** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION</u>

In October 2011, Steve Allen Braden filed a pro se motion under 28 U.S.C. § 2255 (Doc. No. 1) to vacate, set aside, or correct a sentence previously imposed by this Court. *See United States v. Braden*, 3:08-cr-00148, Doc. No. 114 (M.D. Tenn. July 22, 2009) [hereinafter cited as "Crim. Doc. No. ___"]. As explained below, this case has developed an extensive and complex procedural history since that time. It is currently before the Court on remand from the Sixth Circuit "to consider the arguments presented in Mr. Braden's initial pro se § 2255 petition."[1] *Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016). And for the following reasons, Mr. Braden is not entitled to relief under Section 2255 and this action will be dismissed.

## I.    Background

### A.    Criminal Case

In June 2008, an indictment charged Mr. Braden with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g) ("Count 1") and possession with intent to distribute cocaine base and cocaine in violation of 21 U.S.C. § 841 ("Count 2"). (Crim. Doc. No. 1.) At the initial appearance on July 28, 2008, the Court appointed counsel to represent Mr. Braden.

---

[1]    Also pending in Mr. Braden's criminal case is a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act. (Crim. Doc. No. 183.) The Court will address Mr. Braden's First Step Act motion separately.

(Crim. Doc. No. 7.)  In a letter dated August 18, Mr. Braden requested another attorney.  (Crim. Doc. No. 12.)  Counsel followed up with a formal motion to withdraw, (Crim. Doc. No. 13), which the Court granted (Crim. Doc. No. 14).

Attorney Jerry Gonzalez entered a notice of appearance on behalf of Mr. Braden on September 5.  (Crim. Doc. No. 16.)  On December 19, 2008, Mr. Gonzalez filed a motion to suppress on Mr. Braden's behalf.  (Crim. Doc. No. 33.)  He attached a pro se motion drafted by Mr. Braden "for the substantive arguments made therein," (Crim. Doc. Nos. 33 at 1, 33-1), as well as a "short brief in support drafted by counsel" (Crim. Doc. Nos. 33 at 1, 34 (footnote omitted).)  The Government filed a response, (Crim. Doc. No. 36), and the Court set a hearing on the motion (Crim. Doc. No. 37).

On January 12, 2009, Mr. Gonzalez filed a motion to withdraw "based on the defendant's wish to represent himself or, alternatively, to be assigned as standby counsel."  (Crim. Doc. No. 39 at 4.)  Mr. Braden opposed Mr. Gonzalez's request to be assigned as standby counsel.  (Crim. Doc. No. 42.)  After a hearing, the Court granted the motion "to the extent Mr. Braden will represent himself and Mr. Gonzalez will be assigned as standby or elbow counsel."  (Crim. Doc. No. 43.)

On January 30, 2009, the Court held a hearing on the motion to suppress at which Mr. Braden represented himself.  (Crim. Doc. No. 49; Crim. Doc. No. 71 (transcript).)  The Court denied the motion at the conclusion of the hearing.  (Crim. Doc. No. 49; Crim. Doc. No. 71 at 250.)  Mr. Braden later filed a motion to reconsider the denial of his motion to suppress, (Crim. Doc. No. 74), and the Court denied it (Crim. Doc. No. 75).

On February 18, 2009, the Government obtained a superseding indictment that included Counts 1 and 2 from the original indictment and added a charge for possession of firearms in

furtherance of drug trafficking activity in violation of 18 U.S.C. § 924(c) ("Count 3"). (Crim. Doc. No. 66.) One month later, the second superseding indictment charged Mr. Braden with the same three counts—the only change was an explicit notation in Count 2 that the term "cocaine base" referred to "crack cocaine." (Crim. Doc. No. 76 at 2.)

On March 30, 2009, Mr. Braden filed a motion to re-appoint Mr. Gonzalez to fully represent him, (Crim. Doc. No. 79), and the Court granted it (Crim. Doc. No. 80).

On April 3, 2009, the Government filed an Information Alleging Prior Conviction (21 U.S.C. § 851) ("851 Information"). (Crim. Doc. No. 83.) The 851 Information alleged that Mr. Braden was previously convicted of one felony drug offense—the sale of under .5 grams of cocaine in Case Number II-894-202 in the Criminal Court of Williamson County, Tennessee. (*Id.* at 1.) The 851 Information enhanced Mr. Braden's statutory penalties for Count 2. (*Id.*)

In anticipation of trial, Mr. Gonzalez filed three motions in limine: a motion to exclude references to anything gang related (Crim. Doc. No. 86); a motion to exclude recorded jail calls (Crim. Doc. No. 88); and a motion to restrict the Government to introducing evidence of only one prior felony conviction when establishing the necessary elements for Count 1, being a felon in possession of firearms (Crim. Doc. No. 89). The Court granted the first and third motions, (Crim. Doc. No. 98), and denied the second motion, (*id.*), although the Government accepted Mr. Gonzalez's proposed corrections to the jail call transcripts (Crim. Doc. Nos. 96 and 96).

Trial commenced on April 20, 2009, (Crim. Doc. No. 98), and the jury convicted Mr. Braden on all three counts the next day (Crim. Doc. No. 106). At sentencing, the Court determined that Mr. Braden was an Armed Career Criminal under the Armed Career Criminal Act ("ACCA") and a Career Offender under the United States Sentencing Guidelines (the "Guidelines"). *Braden*, 817 F.3d at 928. The Court sentenced him to concurrent terms of 40

years' imprisonment on Count 1 and Count 2, and a consecutive term of 5 years' imprisonment on Count 3.  (Crim. Doc. No. 114 at 3.)

Mr. Braden appealed.  (Crim. Doc. Nos. 116 at 117.)  Mr. Gonzalez filed a motion to withdraw as counsel in the Sixth Circuit, and the Court granted it.  *United States v. Braden*, No. 09-5854, Doc. Nos. 20 and 21 (6th Cir. Oct. 27, 2009).  On November 9, 2009, attorney Melvin Houston entered an appearance on Mr. Braden's behalf.  *Id.*, Doc. No. 28 (6th Cir. Nov. 9, 2009).  The Sixth Circuit later affirmed Mr. Braden's convictions.  (Crim. Doc. No. 130.)

### B.  Section 2255 Proceedings

Mr. Braden filed a pro se motion under Section 2255 in October 2011.  (Doc. No. 1.)  Mr. Braden "alleged the ineffective assistance of trial counsel, flawed jury instructions that resulted in a constructive amendment of his indictment, illegal search and seizure, insufficient arrest warrant, insufficient search warrant, racial discrimination in the selection of the jury, and the ineffective assistance of appellate counsel."  *Braden v. United States*, No. 14-6395, Doc. No. 11-2 at 1–2 (6th Cir. Apr. 16, 2015).  The Government filed a response, (Doc. No. 21), accompanied by an affidavit from trial counsel Mr. Gonzalez (Doc. No. 21-3.) The Court then "appointed counsel to represent Mr. Braden and instructed newly appointed counsel to 'file an amended motion to vacate if necessary.'"  *Braden*, 817 F.3d at 929.

In June 2012, attorney Isaiah Gant entered an appearance on behalf of Mr. Braden.  (Doc. No. 28.)  Through counsel, Mr. Braden filed an amended motion. (Doc. No. 33.)  The Sixth Circuit summarized the claims in the amended motion as follows:

> 18 U.S.C. § 922(g) is unconstitutional on the basis that it does not criminalize an offense affecting "interstate" commerce; therefore, Braden's indictment did not charge an offense which Congress could validly criminalize under the Commerce Clause.  Moreover, Braden asserted that the government failed to present proof that the firearm ever moved "in" commerce, interstate or otherwise, and the jury never found a connection to "interstate" commerce.  The amended motion also

alleged that the jury instructions on Count 1 were improper; Braden was improperly sentenced under the Armed Career Criminal Act ("ACCA") because his prior convictions were not found by a grand jury, alleged in the indictment, or found by the jury beyond a reasonable doubt; and trial counsel was ineffective for failing to raise arguments relating to the interstate commerce issue and the ACCA.

*Braden*, No. 14-6395, Doc. No. 11-2 at 2. This Court "construed the amended § 2255 motion to supersede the pro se petition and deemed the claims in the pro se petition to be waived.[2] The [district] court then determined that the claims presented in the amended petition did not warrant relief[,]" dismissed this action, and declined to issue a Certificate of Appealability ("COA"). *Id.*

Mr. Braden filed a notice of appeal. (Doc. No. 48.) "While his appeal of the denial of the § 2255 motion was pending, Mr. Braden filed a pro se motion pursuant to Federal Rule of Criminal Procedure 59(e) alleging more ineffective assistance of counsel claims.[3] The district court denied this motion as well." *Braden*, 817 F.3d at 929.

The Sixth Circuit initially "granted a limited certificate of appealability solely to address the question of whether the district court erred in failing to consider Mr. Braden's pro se petition." *Id.* At the same time, the Sixth Circuit found that reasonable jurists would not "debate the district court's conclusions with respect to the claims presented in the amended motion." *Braden*, No. 14-6395, Doc. No. 11-2 at 4.

About one month later, the Sixth Circuit granted Mr. Gant's motion to withdraw and appointed new counsel to represent Mr. Braden on appeal. (Doc. No. 64.) Attorney Kevin Schad filed a notice of appearance on Mr. Braden's behalf in July 2015. *Id.*, Doc. No. 20 (6th Cir. July 10, 2015). Mr. Braden, through counsel, then filed a motion to expand the COA in light

---

[2]     Prior to this ruling, Mr. Braden filed a pro se reply in support of his initial pro se motion. (Doc. No. 44.)

[3]     Mr. Braden also filed another pro se reply in support of his initial pro se motion while his appeal was pending. (Doc. No. 51.)

of *Johnson v. United States*, 135 S. Ct. 2551 (2015), and the Sixth Circuit "expanded the certificate of appealability to encompass the issue of whether Mr. Braden remain[ed] an Armed Career Offender under the ACCA." *Braden*, 817 F.3d at 929.

In March 2016, the Sixth Circuit affirmed "Mr. Braden's classification as an Armed Career Criminal under the ACCA," and remanded this action for the Court "to consider the arguments presented in Mr. Braden's initial pro se § 2255 petition." *Id.*

In July 2016, Mr. Braden filed a pro se amended motion in this Court, intended to supplement rather than supersede his initial pro se motion. (Doc. No. 74 at 1.) The Court appointed counsel, (Doc. No. 80), and attorney James Cartwright entered an appearance on Mr. Braden's behalf in February 2017 (Doc. No. 85). Mr. Cartwright filed a "Statement Proferring a List of Issues to Resolve." (Doc. No. 97.) Shortly thereafter, Mr. Cartwright filed a motion to withdraw, representing that Mr. Braden "believes the [initial pro se] petition speaks for itself, despite Counsel's effort to organize and clarify." (Doc. No. 99 at 1.) The Court granted the motion and set a supplemental briefing schedule. (Doc. No. 100.)

Mr. Braden filed a pro se supplemental brief, (Doc. No. 108-1), the Government filed a response, (Doc. No. 116), and Mr. Braden filed a reply in February 2018 (Doc. No. 118).

## II.     Filings and Claims Currently Before the Court

### A.      Filings Before the Court

As stated above, the Sixth Circuit remanded this action for the Court "to consider the arguments presented in Mr. Braden's initial pro se § 2255 petition." *Braden*, 817 F.3d at 933. The initial pro se motion is eight pages, (Doc. No. 1), and it is accompanied by over 500 pages of attachments comprised of additional argument, citations to legal authority, and excerpts of state

and federal court records (Doc. Nos. 1-1 to 1-5). Mr. Braden also alternated between pro se and non-pro se status as this proceeding progressed, both before and after remand.

Due to this procedural complexity, the Court specifies the filings that are before it as it fulfills its mandate on remand: the entire initial pro se motion, (Doc. Nos. 1 and 1-1 to 1-5); the Government's response, (Doc. Nos. 21 and 21-1 to 21-2), including the affidavit of trial counsel Jerry Gonzalez (Doc. No. 21-3); Mr. Braden's two pro se replies in support of his initial pro se motion, (Doc. Nos. 44 at 51); Mr. Braden's pro se amended motion, (Doc. No. 74); and Mr. Braden's pro se supplemental brief, (Doc. No. 108-1), the Government's response, (Doc. No. 116), and Mr. Braden's reply (Doc. No. 118).

A few notes about the Court's consideration of these filings—Mr. Braden filed his second pro se reply in support of his initial pro se motion (Doc. No. 51) while this action was on appeal, and he filed his pro se amended motion (Doc. No. 74) without leave of the Court after this action was remanded. Given Mr. Braden's pro se status, and in the interest of justice, the Court will consider these filings despite these irregularities. Additionally, the Court considers Mr. Braden's entire initial pro se motion even though, at one point in his supplemental brief, Mr. Braden states that he "will stipulate and waive claims in the pro se filed original 2255 petition" and "now only challenges all ineffective assistance of counsel claims by" his trial counsel, direct appeal counsel, appointed Section 2255 counsel, appellate Section 2255 counsel, and state trial counsel. (Doc. No. 108-1 at 8.) That is because Mr. Braden contradicts this supposed waiver elsewhere in the supplemental brief, specifically requesting that the Court "rule on each and all of the issue raised" in a list of filings that includes his initial pro se motion. (*Id.* at 7.) Finally, the Court does not consider the supplemental brief to bring new, independent claims because Mr. Braden states that the supplemental brief "is presented to the district court . . . to rule upon the original

2255 motion." (Doc. No. 118 at 7.) The supplemental brief, Mr. Braden explains, is simply "meant to assist the district court due to [the] voluminous nature of the 2255 motion." (*Id.* at 8.)

A few notes about filings the Court is *not* considering—Mr. Braden filed a "Motion for Fraud up on [sic] the Court by (MNPD) Metro Nashville Police Department Law Enforcement Officers," (Doc. No. 75), as well as a supporting brief (Doc. No. 76). This motion is among the filings Mr. Braden requests the Court "rule on" in his supplemental brief. (Doc. No. 108-1 at 8.) But the Court already denied this motion without prejudice to Mr. Braden's then-appointed counsel, Mr. Cartwright, raising the issues presented therein at a later date. (Doc. No. 95.) Mr. Cartwright did not renew this motion prior to withdrawal, and Mr. Braden had ample opportunity to raise the issues in this motion through the supplemental briefing allowed by the Court. The Court also is not considering Mr. Cartwright's "Statement Proffering a List of Issues to Resolve," (Doc. No. 97), as Mr. Braden's apparent displeasure with this filing precipitated Mr. Cartwright's withdrawal (Doc. No. 99 at 1). Again, Mr. Braden had an opportunity to address any issues presented by Mr. Cartwright's Statement through his supplemental briefing.

## B.    Claims Before the Court

The Sixth Circuit identified the seven categories of claims in Mr. Braden's initial pro se motion as follows: (1) ineffective assistance of trial counsel; (2) flawed jury instructions that resulted in a constructive amendment of his indictment; (3) illegal search and seizure; (4) insufficient search warrant; (5) insufficient arrest warrant; (6) racial discrimination in the selection of the jury; and (7) ineffective assistance of appellate counsel. *Braden*, No. 14-6395, Doc. No. 11-2 at 1–2. The Court has determined that this motion also includes a *Brady* claim. (Doc. No. 1-1 at 4; Doc. No. 1-4 at 2, 5, 32.) To the extent the Court can discern them, the Court

will address Mr. Braden's specific sub-claims within these broad categories of claims as necessary in the analysis below.

## III.     Standard of Review

"To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on . . . the jury's verdict." *Jefferson v. United States*, 730 F.3d 537, 549–50 (6th Cir. 2013) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

"When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required to determine the truth of the petitioner's claims." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (internal citations and quotation marks omitted). "An evidentiary hearing is not required," however, "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

## IV.     Analysis

The Sixth Circuit and this Court draw Mr. Braden's claims from the beginning of his initial pro se motion. (*See* Doc. No. 1 at 4–7; Doc. No. 1-1 4, 14–17.) These sections are often conclusory or difficult to understand, and the hundreds of pages of attachments that follow provide little clarity. Nonetheless, the Court has considered the entire available record and liberally construed Mr. Braden's initial pro se motion and subsequent briefing to the fullest practicable extent. And for the reasons below, the Court concludes that none of the arguments in Mr. Braden's initial pro se motion entitle him to relief.

The Court will first address Mr. Braden's underlying claims of error, which involves consideration of some of Mr. Braden's claims for ineffective assistance of counsel. The Court will then turn to Mr. Braden's remaining stand-alone ineffective-assistance claims.

**A.    Flawed Jury Instructions that Resulted in a Constructive Amendment**

Mr. Braden asserts that the jury instructions and verdict form constructively amended the second superseding indictment. (Doc. No. 1 at 4.) His concerns focus on Count 3, possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (*Id.*)

Section 924(c)(1) "contains two separate offenses: one for possession of a firearm 'in furtherance of' a drug trafficking crime, and one for using or carrying a firearm 'during and in relation to' a drug trafficking crime." *United States v. Hunter*, 558 F.3d 495, 501–02 (6th Cir. 2009) (citing *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004)). The "possession" crime and the "use" crime have different elements and standards. *Id.* (discussing *Combs*, 369 F.3d 925 and *United States v. Castano*, 543 F.3d 826 (6th Cir. 2008)). Where an indictment charges one of these offenses, but the ensuing trial proceedings are not consistent with the charged offense, it may result in an impermissible "constructive amendment" of the indictment. *Id.*

Here, Mr. Braden seemingly contends that the indictment charged him with the "use" crime, but the jury instructions, verdict form, and judgment constructively amended the indictment by convicting him of the "possession" crime. (Doc. No. 1-2 at 86; Doc. No. 51 at 4–5.) Mr. Braden is mistaken—the second superseding indictment charged him with the "possession" crime, and the ensuing trial proceedings were consistent with this charge.

It appears that Mr. Braden's argument on this point may be based on a legitimate but harmless clerical error on the CMECF docket sheet in Mr. Braden's criminal case. There, in the section listing "Pending Counts" under Mr. Braden's name, the docket sheet reflects that the first

superseding indictment charged him with the "possession" crime, but that the second superseding indictment charged him with "[c]arrying firearms during and in relation to drug trafficking." This notation regarding the second superseding indictment on the docket sheet is incorrect, but it has no bearing on what happened during Mr. Braden's trial or how Count 3 is characterized at any point in the record.

The second superseding indictment specifically charged Mr. Braden with knowingly possessing firearms in furtherance of a drug trafficking crime. (Crim. Doc. No. 76 at 2.) The "in furtherance of" element of the "possession" crime requires the Government to show "that the 'firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense.'" *United States v. Maye*, 582 F.3d 622, 630 (6th Cir. 2009) (quoting *Combs*, 369 F.3d at 933). The Government must also prove that "the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence." *Combs*, 369 F.3d at 933. The Sixth Circuit has listed a few relevant factors to use when considering "whether the possession was 'in furtherance of' the crime, including: (1) whether the firearm was loaded; (2) the type of firearm; (3) whether the weapon was stolen or legitimately possessed; (4) the type of drug activity conducted; and (5) the time and circumstances under which the gun was found." *Id.* (citing *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)).

Here, while instructing the jury, the Court correctly stated Mr. Braden's charged offense—"possessing firearms in furtherance of a drug-trafficking crime" (Crim. Doc. No. 129 at 18)—and described the "in furtherance of" element of this offense in language that closely tracks the controlling Sixth Circuit precedent identified above:

> The phrase "in furtherance of" means that the firearm was possessed to advance or promote the crime charged in Count 2 and that the firearm was strategically located so that it was quickly and easily available for use. Other factors that may be relevant to a determination of whether the weapons were possessed in

furtherance of the crime include whether the firearms were loaded, the type of firearms, the legality of the possession, the type of drug activity conducted and the time and circumstances under which the firearms were found.

(*Id.* at 19–20.)  Additionally, the verdict form correctly characterizes Count 3 as charging Mr. Braden with "possessing a firearm in furtherance of a drug trafficking crime."  (Crim. Doc. No. 106 at 2.)  And the judgment likewise refers to Count 3 as "possession of firearms in furtherance of a drug trafficking offense."  (Crim. Doc. No. 114 at 2.)  Given the consistent characterization of Count 3 within the record, Mr. Braden's claim that the Court gave "flawed jury instructions that resulted in a constructive amendment" is without merit.

Aside from the "constructive amendment" argument, Mr. Braden raises some kind of challenge to the jury instructions for Count 1.  (Doc. No. 1-2 at 69.)  But Mr. Gant raised a claim that "the jury instructions on Count 1 were improper" in the amended motion, and this Court denied it.  *Braden*, No. 14-6395, Doc. No. 11-2 at 2.  The Sixth Circuit found that "the challenged jury instructions were a correct statement of the law in this circuit," and denied a COA on this claim.  *Id.* at 4 (citing *United States v. Henry*, 429 F.3d 603, 620 (6th Cir. 2005)).  Accordingly, to the extent that Mr. Braden's initial pro se motion asserts this claim as well, it is without merit.

### B.  Illegal Search and Seizure

Next, Mr. Braden asserts that he was subject to "illegal search and seizure" by Metropolitan Nashville Police Department ("MNPD") Officers "Corey Alexis West and Neil Patrick Wolfe."  (Doc. No. 1 at 5.)  Indeed, Mr. Braden's primary focus throughout his initial pro se motion and subsequent briefing is on the search of his residence by police officers responding to a 911 call.  The Government argues that Mr. Braden's "illegal search and seizure" claim should be denied because it attempts to relitigate issues already decided by this Court and the

Sixth Circuit. (Doc. No. 21 at 11; Doc. No. 116 at 12.) The Court agrees. Further, as explained in more detail below, any new search-and-seizure claims are also without merit because they are procedurally defaulted without cause.

### 1. Previously Raised on Direct Appeal

Mr. Braden asserts that officers responding to a 911 call illegally searched his residence and planted evidence in plain view, (Doc. No. 1-1 at 29, 38; Doc. No. 1-4 at 30; Doc. No. 1-5 at 133–34), and that the officers refused Mr. Braden's request to leave the residence (Doc. No. 1-1 at 38; Doc. No. 1-4 at 30). These exact arguments were addressed in Mr. Braden's criminal case.

In December 2008, Mr. Braden filed a motion to suppress the evidence obtained from the search of his residence. (Crim. Doc. No. 33.) This motion incorporated a pro se motion drafted by Mr. Braden, (Crim. Doc. No. 33-1), and a brief in support drafted by then-counsel Mr. Gonzalez (Crim. Doc. No. 34). According to the pro se motion, Officers Wolfe and Park impermissibly remained in Mr. Braden's residence after he asked them to leave, and then they conducted an illegal search. (Crim. Doc. No. 33-1 at 2–3.) After the ambulance arrived, Mr. Braden argued, he again requested that Wolfe and Park leave the residence so that he could lock his door. (*Id.* at 3.) According to Mr. Braden, the officers refused and "used the warrantless and illegal search" to obtain a search warrant. (*Id.* at 4.) Mr. Braden maintained that there was no incriminating evidence in plain view, and that any evidence used to justify the search warrant was the result of an illegal search. (*Id.* at 4–5.) Mr. Gonzalez's supporting brief put this argument plainly: "After the unlawful search uncovered illegal substances, officers then placed a bag of crack cocaine on top of the dresser drawer and claimed that they had seen it in 'plain view.' On this basis, they sought and obtained a search warrant." (Crim. Doc. No. 34 at 4.)

Soon after Mr. Gonzalez filed the motion to suppress, Mr. Braden submitted a letter stating that he intended to represent himself going forward, (Crim. Doc. No. 38), and Mr. Gonzalez filed a motion to withdraw on that basis (Crim. Doc. No. 39). Mr. Gonzalez, however, requested to be assigned as standby counsel if the Court allowed him to withdraw, (*id.* at 4), and the Court granted that request (Crim. Doc. No. 43).

On January 30, 2009, the Court held a hearing on the motion to suppress at which Mr. Braden represented himself. (Crim. Doc. No. 71 (transcript).) At the hearing, the Court heard testimony from MNPD personnel Neil Wolfe, Sung Jun Park, Joseph Towers, Kurt Knapp, and Cory West. (*Id.* at 8, 69, 125, 158, 175.) Paramedic John Kerr and Mr. Braden also testified. (*Id.* at 91, 222.) The Sixth Circuit summarized the facts underlying the search as follows:

> Braden and his former girlfriend, Keyiona Oatis,[4] called 911 to report that she had stabbed him with a knife and to request that the police and an ambulance come to his residence. Officer Sung Jun Park, Officer Neil Wolfe and an officer in training initially responded to the dispatch. When the officers approached the front door of Braden's residence, which was open, Officer Park announced their presence and asked if anyone was inside. Braden responded from the basement, "I'm in here. I'm downstairs." The officers went directly to the basement, where Braden was sitting on a bed. Officer Park attended to Braden's stab wounds while Officer Wolfe assessed the crime scene and looked for the weapon used in the stabbing. Braden directed Officer Wolfe to the weapon, a knife, which was on top of a dresser facing the bed. Officer Wolfe observed in plain view a small amount of suspected powder cocaine and a .223 caliber round of ammunition on top of the dresser, as well as a baggie containing suspected crack cocaine in a partially open dresser drawer. At some point after Officer Wolfe observed the ammunition and suspected drugs, Braden asked the police officers to leave the residence.
>
> While paramedics were in the process of treating Braden and transporting him to the hospital, Officer Wolfe contacted his supervisor and advised that they would need to obtain a search warrant for the residence based on the items that he had seen in plain view. The police officers secured the crime scene, "freezing" it for a search warrant, and made sure that all items were left in place and not manipulated. Officer Cory West subsequently arrived at the residence and went

---

[4] This individual is sometimes referred to as "Keyiona Moore" in the record, but the Court will refer to her using the last name "Oatis" for consistency with the trial transcript. (*See* Crim. Doc. No. 121 at 18.)

to the basement, where Officer Wolfe pointed out the items that he had observed in plain view.  Officer West left to obtain a search warrant for the residence based on the police officers' plain-view observations and returned to execute the warrant.  The search of the residence revealed three firearms and crack and powder cocaine.

(Crim. Doc. No. 130 at 2–3.)

At the conclusion of proof, the Court found that "everybody testif[ied] that there was plain-view cocaine there with the exception of the defendant."  (Crim. Doc. No. 71 at 250.)  And the Court found that Mr. Braden's credibility had been "destroyed" by the recording of the 911 call, (*id.*), which is discussed in greater detail below.  The Court, accordingly, concluded that "[t]he plain-view exception clearly applies in this case," and denied the motion to suppress.  (*Id.*)

One of Mr. Braden's issues for review on direct appeal was "whether the district court judge should have granted [his] Motion to Suppress the evidence seized from his home."  (Doc. No. 21-1 at 5.)  There, he essentially presented the same argument as at the hearing on his suppression motion—that the officers should have left his residence when he asked them to, and the Court should have suppressed all the evidence seized after this request.  (*Id.* at 20, 23.)

The Sixth Circuit rejected this argument:

When reviewing a district court's decision regarding a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo.  *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010).  "Where a district court denies that motion, we consider the evidence in the light most favorable to the government."  *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (internal quotation marks omitted).

\* \* \*

The Fourth Amendment's prohibition on the warrantless entry of a person's home does not apply to situations in which the person has given voluntary consent.  *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).  In his brief, Braden concedes that "the police officers' initial presence in [his] home was probably consented to."  Regardless of whether Braden consented to the initial entry of his residence, "law enforcement officers may enter a home without a warrant to render

emergency assistance to an injured occupant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

Braden instead contends that he revoked any consent when he asked the police officers to leave. A consenting party "at any moment may retract his consent," and upon revocation of consent, police officers should "promptly depart[ ] the premises (assuming they possess[ ] no independent legal authority to remain)." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Viewing the evidence in the light most favorable to the government, Braden asked the police officers to leave after Officer Wolfe had already observed the ammunition and suspected drugs in plain view. The police officers' plain-view observations did not constitute a search implicating the Fourth Amendment. *See Hinojosa*, 606 F.3d at 884-85. The police officers remained to secure the crime scene and "freeze" it until they could obtain a search warrant. The Supreme Court has held that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." *Segura v. United States*, 468 U.S. 796, 810 (1984). Therefore, the police officers acted properly in securing the premises and waiting for a search warrant before conducting a search of Braden's residence. *See United States v. Taylor*, 248 F.3d 506, 513 (6th Cir. 2001).

(Crim. Doc. No. 130 at 2–4.)

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)). Mr. Braden does not identify a change in the law since the Sixth Circuit decided his direct appeal, nor does he identify any other "highly exceptional circumstances" that justify relitigating the legality of the search at this juncture. The Sixth Circuit previously decided that the officers did not illegally enter Mr. Braden's residence, and that the subsequent search of the residence and seizure of the inculpatory evidence was not improper. Thus, the "illegal search and seizure" claim in Mr. Braden's initial pro se motion is without merit. *See Kelly v. United States*, No. 16-6756, 2017 WL 6048864, at *2 (6th Cir. July 5, 2017) (rejecting a Section 2255 movant's argument that "his conviction was the result of an

unlawful search and seizure and/or false arrest" where the district court "found that the claim had been effectively raised and rejected on direct appeal").

### 2. Claims that Could Have Been Raised on Direct Appeal

"It is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). "[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Thus, to the extent that Mr. Braden raises any new claim related to the allegedly illegal search and seizure, the Court is procedurally barred from considering it unless he makes one of these showings.

Mr. Braden cannot establish "actual innocence" because he does not cite to any newly discovered evidence. *See Guadarrama v. United States*, No. 16-6218, 2017 WL 3391683, at *3 (6th Cir. Feb. 13, 2017) (quoting *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013)) ("To show actual innocence, a petitioner must establish that 'in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"). He does assert, however, several ways in which his trial and appellate counsel were ineffective in litigating the allegedly illegal search and seizure. And the ineffective assistance of counsel may serve as "cause" to excuse the failure to raise claims on direct appeal. *See Ray*, 721 F.3d at 761–63 (considering whether counsel's asserted ineffectiveness excused a movant's "failure to assert his Fourth Amendment claim" prior to Section 2255 proceedings). The Court considers Mr. Braden's ineffective-assistance claims related to the allegedly illegal search and seizure in this context.

"To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) 'counsel's performance was deficient'; and (2) 'the deficient performance prejudiced the defense.'" *Id.* at 762 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

At least two of Mr. Braden's assertions of ineffectiveness on search-and-seizure issues are conclusory and contradicted by the record, and therefore insufficient to excuse his failure to previously any new claims. *See Kelly*, 2017 WL 6048864, at *2 (citing *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)) (finding that a Section 2255 movant did not show "cause for failing to raise [] a claim on direct appeal" where he "mentioned ineffective assistance of counsel," but did "so summarily," without "clearly indicat[ing] what issues counsel failed to raise or how those issues would have changed the result of his case"). First, Mr. Braden asserts that Mr. Gonzalez was ineffective for failing to file pretrial motions, (Doc. No. 1-1 at 16), including a motion to suppress (Doc. No. 108-1 at 24, 27). But Mr. Gonzalez, in fact, filed the motion to suppress, (Crim. Doc. No. 33), even though Mr. Braden represented himself at the suppression hearing. And second, Mr. Braden asserts that appellate counsel, Mr. Houston, was ineffective for failing to raise "any issues from the suppression hearing." (Doc. No. 1-1 at 16.) This is both conclusory and contradicted by the record, as Mr. Houston challenged the denial of the motion to suppress on direct appeal.

One specific assertion in Mr. Braden's initial pro se motion is that Mr. Gonzales was ineffective in failing to introduce an audio recording of the 911 call because it would have demonstrated that the officers "illegally entered" his residence after a dispatcher "said "No.'" (Doc. No. 1 at 6.) Mr. Braden also brings a direct challenge to the search itself on essentially this same basis. (Doc. No. 1 at 4, 7 ("[D]ispatch gave this Flex unit specific orders do not respond to the residence the Flex officers responded anyway and illegally entered the residence

did a protective sweep and after the removal of (victim) Mr. Braden plain-view was observ[ed] by flex officer Neil P. Wolfe.").)  In fact, Mr. Braden raises this complaint repeatedly throughout the initial pro se motion and his subsequent briefing.  (*See, e.g.*, Doc. No. 1 at 4, 7; Doc. No. 1-1 at 26–27, 29, 38; Doc. No. 1-4 at 25, 30, 36; Doc. No. 51 at 9, 18–19, 24–25, 28.)

Mr. Braden's clearest expression of this argument, as far as the Court can tell, is that the police officers' initial entry into his residence did not fall under the "exigent-circumstances exception" to the Fourth Amendment's warrant requirement because the dispatch recording reflects that the officers were "acting in a[] [c]apacity that was not 'authorized' by their 'dispatcher.'"  (Doc. No. 51 at 24–25.)

As an initial matter, the Court rejects Mr. Braden's characterization of the dispatcher's communication with the officers.  The transcript[5] reflects that, at some point, an officer said, "(unintelligible) send me that," and the dispatcher responded, "No."  *Braden*, No. 09-5854, Doc. No. 64 at 16 (June 8, 2010).  Immediately afterwards, an officer said, "Send me that 51 please," and the dispatcher responded, "Yeah."  *Id.*  In two annotated excerpts of this transcript attached to Mr. Braden's initial pro se motion, Mr. Braden wrote "No" next to the word "Yeah."[6]  (Doc. No. 1-2 at 55; Doc. No. 1-5 at 43.) On this record, the Court does not agree that the dispatcher "ordered" any officers not to respond to Mr. Braden's residence, as he claims.

Even accepting Mr. Braden's characterization, however, it has no relevance whatsoever to the legality of any officer's entry into Mr. Braden's residence.  On direct appeal, the Sixth Circuit found that the officers' entry was justified for two independent reasons: Mr. Braden's

---

[5]    At the suppression hearing, the Court admitted a transcript of 911 calls and dispatch communications pertaining to the events at issue here.  (Crim. Doc. No. 71 at 245.)  At the time, the Government noted that the transcript lists an incorrect name for some of the officers.  (*Id.*)

[6]    The Court also notes Mr. Gonzalez's affidavit, in which he states that he "reviewed the transcript of the 911 call and the dispatcher never said anything like [instruct[ing] police officers not to enter Mr. Braden's residence.]"  (Doc. No. 21-3 at 2.)

consent, and the exigent-circumstances exception. Neither reason is affected by the dispatch communication relied upon by Mr. Braden.

Mr. Braden conceded on direct appeal "that 'the police officers' initial presence in [his] home was probably consented to.'" (Crim. Doc. No. 130 at 3.) And this concession was for good reason—Mr. Braden's comments when the officers arrived at his residence, as recorded on the 911 call, would have made it hard to argue otherwise. The transcript of the 911 call is consistent with the premise that Mr. Braden specifically consented to the officers' entry, and that he knew they were affiliated with the police. He said, "come in officer. Somebody tell the police to come in now. I'm sitting down on my bed. I'm here sir. I'm right here sir. Officer." *Braden*, No. 09-5854, Doc. No. 64 at 13. Mr. Braden's suppression hearing testimony regarding this call is also consistent with consent:

> Q.      So Mr. Braden, just before we stopped, you heard the portion where you yell up -- basically telling the officer you're down here, you're sitting on the bed, all that? Remember that?
>
> A.      Yeah. I tell them to come in my house, yeah.
>
> Q.      Okay.
>
> A.      Yes, sir, I am glad to see somebody there. I hear my front door open, I say, "Officer, I'm down here." They don't identify they-self. They don't say, "Officers." You see on the tape; they don't identify they-self. I hear my front door open, I'm thinking it's the paramedics or the officers. I'm down here in the bedroom.

(Crim. Doc. No. 71 at 243–44.)

Likewise, whether the dispatcher told a particular officer not to respond to the residence is irrelevant to the application of the exigent-circumstances exception in this context. As the Sixth Circuit noted on direct appeal, "'law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant.'" (Crim. Doc. No. 130 at 3

(quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).) "This 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (quoting *Brigham City*, 547 U.S. at 404–05). Instead, "[i]t requires only an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid." *Id.* (internal citations and quotation marks omitted).

As stated above, Mr. "Braden and his former girlfriend, Keyiona Oatis, called 911 to report that she had stabbed him with a knife and to request that the police and an ambulance come to his residence." (Crim. Doc. No. 130 at 2.) Mr. Braden has not explained how the dispatcher's communication would have affected the officers' belief that he needed immediate aid for his stab wounds, particularly given the fact that medical personnel were not on the scene before officers entered Mr. Braden's residence. *See Stricker v. Twp. of Cambridge*, 710 F.3d 350, 359–60 (6th Cir. 2013) (discussing *Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003) and *Johnson v. City of Memphis*, 617 F.3d 864 (6th Cir. 2010)) ("[A] 911 call on behalf of an injured party and affirmative evidence that someone may be or could be hurt can each contribute substantially to an objectively reasonable belief in the existence of a medical emergency.").

In sum, Mr. Gonzalez was not ineffective for failing to introduce the audio and transcript of the 911 call and dispatcher recording at trial, and so this claim does not act as cause to excuse Mr. Braden's failure to bring any new search-and-seizure claim at an earlier proceeding. This is true for two reasons. First, the recording does not stand for the proposition Mr. Braden says it does—it does not clearly reflect that the dispatcher told the officers not to respond to Mr. Braden's residence. And second, even if it did, that communication would have no bearing on

the legality of the officers' entry because Mr. Braden consented, and the exigent-circumstances exception would still apply. Thus, Mr. Gonzalez was not ineffective for failing to introduce this recording at trial, Mr. Houston was not deficient for failing to raise this issue on appeal, and Mr. Braden cannot rely on this line of argument to excuse his failure to previously bring any other claims related to the allegedly illegal search and seizure.

There is one more assertion of ineffectiveness that Mr. Braden may be relying on to gain consideration of new "illegal search and seizure" claims. He asserts that Mr. Gonzalez failed to "object to" perjured testimony at the suppression hearing and at trial, (Doc. No. 1-1 at 16), and he seems to assert that Mr. Houston was ineffective for failing to address perjured or inconsistent testimony on appeal (Doc. No. 1-1 at 31; Doc. No. 108-1 at 26, 30, 32).

Throughout his initial pro se motion and subsequent briefing, Mr. Braden intersperses a great deal of argument that testimony was either inconsistent or perjured in some way—mostly the testimony of Officers Wolfe, Park, and West. (*See, e.g.*, Doc. No. 1-1 at 31; Doc. No. 1-2 at 70–74; Doc. No. 1-4 at 29, 41; Doc. No. 51 at 11–12, 23, 28; Doc. No. 108-1 at 9, 24–25, 31–32, 34, 40; Doc. No. 118 at 3, 10.) This argument is often opaque or conclusory, and Mr. Braden does not always tie the allegations of perjury to a claim of ineffectiveness. Nonetheless, the Court has considered whether, based on Mr. Braden's argument, Mr. Gonzalez was ineffective in handling allegedly inconsistent or perjured testimony as it relates to the search of Mr. Braden's residence. And for the following reasons, the Court concludes that Mr. Braden has not established such a claim.

Mr. Gonzalez was not ineffective at the suppression hearing because, due to Mr. Braden's insistence on representing himself, Mr. Gonzalez was not serving as Mr. Braden's counsel at the time. *See Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Faretta v. California*, 422

U.S. 806, 834 n.46 (1975)) ("Logically, a defendant cannot waive his right to counsel and then complain about the quality of his own defense."). For this same reason, Mr. Houston was not ineffective for failing to raise Mr. Gonzalez's alleged ineffectiveness on appeal.

Officer Wolfe did not testify at trial, but Mr. Braden seems to argue that Mr. Gonzalez should have subpoenaed Wolfe to do so, (Doc. No. 108-1 at 26), because Wolfe's suppression hearing testimony was perjured or inconsistent (Doc. No. 1-1 at 31, 72; Doc. No. 1-4 at 41). Mr. Braden also maintains that Officers Park and West, who testified at both the suppression hearing and at trial, committed perjury. (Doc. No. 1-2 at 71, 73; Doc. No. 1-4 at 41–42; Doc. No. 51 at 22–23; Doc. No. 108-1 at 31–32.) But the examples of false testimony given by Mr. Braden are clearly baseless, mischaracterized, or inconsistencies so minor as to have no effect on the trial result.

Starting with the clearly baseless—Mr. Braden asserts that Officer Wolfe gave perjured testimony at the suppression hearing about contacting dispatch to make sure that an ambulance was on the way to Mr. Braden's residence. (Doc. No. 1-4 at 41.) Despite Mr. Braden's assertion to the contrary, the fact that this contact was not captured on the dispatch recording does not mean that it did not happen. As to Officer Park, Mr. Braden makes a conclusory assertion that the Government tampered with the dispatch recording to add Park's voice. (Doc. No. 51 at 22.) Somewhat relatedly, Mr. Braden seems to argue that Park could not have been in his residence while he was there because Park is "Chine[se]" and the officers in the residence were "three white Males." (*Id.* at 22–23.) These unsupported assertions are not persuasive. Finally, as to Officer West, Mr. Braden asserts that he lied about his own middle name at the suppression hearing, seemingly because another officer with a similar name was listed on a report as responding to the scene. (Doc. No. 1-2 at 73.) But, as Officer *Cory* West testified at the time,

there was an MNPD Sergeant named *Chris* West, and they are two different people.[7]  (Crim. Doc. No. 71 at 175–76.)

On to the mischaracterization—Mr. Braden asserts that Park falsely testified because his description of Mr. Braden's wounds was not accurate.  (Doc. No. 51 at 9–10; Doc. No. 108-1 at 34.)  Specifically, Mr. Braden seems to assert that Park's testimony must have been false because Mr. Braden "was never stabb[ed] under his 'arm.'"  (Doc. No. 108-1 at 34.)  But at no point did Park testify that Mr. Braden was actually stabbed under his arm.  Rather, at trial, Park testified that he noticed Mr. Braden sitting with a bloody towel over his shoulder and chest area after he entered Mr. Braden's bedroom.  (Crim. Doc. No. 123 at 97.)  Park then testified that he asked Mr. Braden "to lift up his arm so [he] could take a look at the wound."  (*Id.*)  This could be reasonably read as a request by Park for Mr. Braden to simply move his arm away from the towel covering his wounds; regardless, when administering medical aid to someone with a stab wound in the chest area, it would not be unusual to ask him to move his arm to get a better look.  Thus, Mr. Braden misinterprets Park's testimony on this point.

Turning to the alleged inconsistencies—Mr. Braden challenges the officers' testimony regarding the timing of their arrival at the residence and the timing of the search.  (Doc. No. 1-1 at 31; Doc. No. 1-2 at 70–71, 73–74; Doc. No. 1-4 at 39–42; Doc. No. 51 at 11–13.)  Mr. Braden seems to base these challenges on minor differences in how officers described the timing of their arrival and search through testimony and as reflected on various reports.  Some of the officers' testimony regarding the timing of these events was given in general or approximate terms, and therefore did not create inconsistencies.  (*See* Crim. Doc. No. 71 at 11 (Wolfe's suppression hearing testimony); *id.* at 191–92 (West's suppression hearing testimony); Crim. Doc. No. 123 at

_____
[7]  Officer Wolfe's suppression hearing testimony was consistent with Officer West's testimony on this point.  (Crim. Doc. No. 71 at 48–49.)

92, 103 (Park's trial testimony); *id.* at 117 (West's trial testimony).)  To be sure, however, the exact timing of events is not consistent throughout the entire record.  (*Compare* Doc. No. 1-4 at 53 (West's arrest warrant affidavit reflecting that he responded to Mr. Braden's residence at 12:30 a.m. on January 17), *with* Doc. No. 1-4 at 11 (West's testimony at Mr. Braden's state violation-of-probation hearing that Officer Wolfe called him at 1:00 a.m. on January 17).)

Mr. Braden also points to an inconsistency in the record regarding when Officer Wolfe observed the plain-view evidence and the knife used to stab him Officer Wolfe.  (Doc. No. 1-1 at 31.)  He bases this challenge on an apparent difference between the dispatch recording and Wolfe's suppression hearing testimony.  (*Id.*)  The dispatch recording transcript reflects that Wolfe had not seen the knife by the time he observed the plain-view evidence, *Braden*, No. 09-5854, Doc. No. 64 at 18, while his testimony at the suppression hearing can be read to reflect that he saw the knife and the evidence at about the same time (Crim. Doc. No. 71 at 16, 33–35).

Mr. Braden presents one more minor inconsistency regarding his front door: Wolfe testified at the suppression hearing that it was slightly ajar, and that Officer Park used his foot to push it open (Crim. Doc. No. 71 at 12, 30–31);  Park, on the other hand, testified that the door was wide open (Crim. Doc. No. 71 at 73–74, 80–81 (suppression hearing testimony); Crim. Doc. No. 123 at 109–10 (trial testimony)).

The Court concludes that Mr. Gonzalez was not deficient in handling any of this allegedly inconsistent testimony at trial.  The trial testimony of Officers Park and West was not inconsistent with their own prior statements or each other's trial testimony, and so Mr. Gonzalez would not have had a basis to attack their credibility using the alleged inconsistencies identified by Mr. Braden.  Any trial testimony regarding the timing of events was given in approximate terms.  During his cross-examination of Officer Park, Mr. Gonzalez tested Park's recollection of

Mr. Braden's front door, and Park's testimony did not contradict his own prior statements. (Crim. Doc. No. 123 at 109–10.) Mr. Gonzalez also cross-examined Officer West, and West's testimony was consistent with his own prior statements. As to Officer Wolfe, Mr. Braden asserts that Mr. Gonzalez should have subpoenaed him to testify and attacked his credibility at trial. But the Court cannot conclude that Mr. Gonzalez was deficient for failing to do so because that would require a great deal of speculation about Wolfe's expected trial testimony.

Additionally, and perhaps more importantly, the Court concludes that Mr. Gonzalez's handling of the alleged inconsistencies did not prejudice Mr. Braden. To establish prejudice, Mr. Braden "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "In making this showing, '[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Sylvester v. United States*, 868 F.3d 503, 511 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 693). Instead, Mr. Braden "must show that 'counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

Here, there is not a reasonable probability that the minor discrepancies identified by Mr. Braden, considered individually or collectively, would have resulted in a different outcome at trial. The testimony of Officers Wolfe, Park, and West was consistent on the substantive facts underlying their response to Mr. Braden's residence and the subsequent search. *See United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)) ("[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."). Moreover, as the Sixth Circuit found on

direct appeal, the evidence supporting Mr. Braden's guilt at trial was "overwhelming,"[8] and included "the firearms and drugs found at his residence and his admissions in recorded jail calls."[9]  (Crim. Doc. No. 130 at 4–5.)

Mr. Braden's claim that Mr. Gonzalez was ineffective for failing to object to supposedly perjured testimony is without merit.  Accordingly, Mr. Houston was not ineffective for failing to raise this issue on appeal, and Mr. Braden cannot rely on this claim to excuse his failure to previously raise any new "illegal search and seizure" claims.  *See Sylvester*, 868 F.3d at 510 (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)) ("[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

Finally, the Court notes that, adjacent to some of his argument regarding supposedly perjured testimony, Mr. Braden provides legal citations that may be an attempt to invoke a claim that the Government committed prosecutorial misconduct by knowingly presenting false testimony.  (*See* Doc. No. 1-4 at 43.)  Any such claim will be denied for three reasons.  First, it is not among the categories of claims identified by the Sixth Circuit on appeal, and it is not clearly identified on the initial pro se motion itself.  Second, it is insufficiently pled under Rule 2(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts ("Section 2255 Rules") because Mr. Braden does not clearly state the facts supporting this ground.  *See*

---

[8]     The Sixth Circuit has noted that its own prior characterization on direct appeal that evidence of guilt was "overwhelming" makes it "questionable" that a Section 2255 movant could satisfy the prejudice prong of a claim for ineffective assistance of counsel. *Ray*, 721 F.3d at 763 n.2 (citation omitted).

[9]     Mr. Braden references these recorded jail calls in his initial pro se motion, and seems to assert that they should not have been admitted at trial because his presence in jail was the result of this allegedly illegal search.  (Doc. No. 1 at 5.)  Because Mr. Braden's "illegal search and seizure" claim is without merit, this claim fails as well.  Additionally, to the extent that Mr. Braden is attempting to challenge the admission of the recorded jail calls on an independent basis, the Court notes that the monitoring of inmates' calls does not violate the Fourth Amendment.  *See United States v. Adams*, 321 F. App'x 449, 462 (6th Cir. 2009).

*Merritt v. United States*, No. 2:13-cv-02304, 2016 WL 447729, at *6 (W.D. Tenn. Feb. 4, 2016) (dismissing a Section 2255 claim based on failure to file a motion to suppress under Rule 2). And third, for substantially the same reasons as above, Mr. Braden has not established that the allegedly "'false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Fields*, 763 F.3d at 462 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (6th Cir. 1972)). As the Sixth Circuit has explained, "[t]he burden 'is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by Government witnesses do not establish knowing use of false testimony.'" *Id.* (citing *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010)). Mr. Braden has not carried his burden of demonstrating that any supposedly false testimony would have affected the jury verdict, and this prospective claim fails.

### C.      Insufficient Search Warrant

Mr. Braden's challenge to the sufficiency of the search warrant fails for the same reasons as his "illegal search and seizure" claim—it is an attempt to relitigate a claim previously decided by the Sixth Circuit, and Mr. Braden has not demonstrated cause to excuse his failure to assert any new "insufficient search warrant" claims on direct appeal.

#### 1.      Previously Raised on Direct Appeal

In the initial pro se motion, Mr. Braden asserts that the search warrant was invalid because it was "not a part of the state court records it was obtained and never executed." (Doc. No. 1 at 6.) The Court construes this as a claim that the search warrant and its execution were invalidated by Officer West's four-month delay filing the return of service.[10]

---

[10]      This construction is consistent with Mr. Braden's arguments in the attachments to the initial pro se motion and his subsequent briefing. (*See* Doc. No. 1-1 at 23, 27; Doc. No. 1-2 at 71; Doc. No. 1-4 at 6–7; Doc. No. 1-5 at 135; Doc. No. 108-1 at 35–36.)

The Sixth Circuit addressed this claim on direct appeal. There, Mr. Braden specifically argued that both the search warrant and its execution were invalidated by Officer West's "unreasonable delay" of four months in filing the return of service for the warrant. (Doc. No. 21-1 at 23.) The Sixth Circuit rejected this argument:

> Braden challenges the search warrant on the basis that Officer West took four months to file the return of service for the warrant. Failure to make a prompt return of a search warrant bears "no relation at all to the command of the Fourth Amendment which bars unreasonable searches and seizures," as the return requirement comes "into play after the search and seizure [are] completed." *United States v. Dudek*, 530 F.2d 684, 691 (6th Cir. 1976). Furthermore, Braden failed to show any prejudice from the delay in filing the return of service. *See United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971).

(Crim. Doc. No. 130 at 4.) While Mr. Braden argues that Mr. Houston was ineffective in litigating this claim because he did not properly support the argument with case law, (Doc. No. 1-1 at 15), Mr. Braden does not offer any case law that cuts against the Sixth Circuit's conclusion. Nor does he challenge the Sixth Circuit's finding that he failed to demonstrate how the delayed return of service prejudiced him. Thus, the Court cannot consider this claim because it was "effectively raised and rejected" on direct appeal, *Kelly*, 2017 WL 6048864, at *2, and Mr. Houston was not ineffective in litigating it.

### 2. Claims that Could Have Been Raised on Direct Appeal

Any new claims related to the sufficiency of the search warrant are procedurally barred because Mr. Braden could have, but did not, assert them on direct appeal. Moreover, he cannot demonstrate any ineffective assistance as cause for failing to litigate these claims because they are unsupported by the record.

In the initial pro se motion, Mr. Braden asserts that "the 'probable cause[]' [was] unsigned," (Doc. No. 1 at 5), and that "'probable cause' was never determine[d]" (Doc. No. 1 at 6.) The Court considers these assertions together and construes them as a claim that the search

warrant authorizing a search of Mr. Braden's residence was invalid because the affidavit in support of probable cause was not signed.  This claim, however, is baseless.

There are two copies of the search warrant attached to Mr. Braden's initial pro se motion. One copy is heavily annotated by Mr. Braden, and the return of service is not completed.  (Doc. No. 1-4 at 75–79.)  The other copy has only a few underlines on it, and the return of service is completed.  (*Id.* at 80–84.)  On both copies, however, it is clear that Judge Angelita Blackshear Dalton, a Davidson County General Sessions Court Judge, signed the affidavit in support of the search warrant completed by Officer Cory West.  (*Id.* at 78, 83.)  Judge Dalton also clearly signed the search warrant itself.  (*Id.* at 75, 80.)

In apparent acknowledgment that the record plainly contradicts his claim, Mr. Braden next argues that Judge Dalton's signature was forged.  (*See* Doc. No. 108-1 at 37.)  This assertion can be readily rejected because it is entirely speculative and conclusory.  But a deeper review of the record also reflects that it was investigated and debunked prior to Mr. Braden's trial.

Attached to Mr. Braden's initial pro se motion is an investigative report dated November 18, 2008.  (Doc. No. 1-5 at 61.)  According to this report, an investigator interviewed Judge Dalton, she authenticated her signature on the search warrant, and she stated that she relied only on the facts in the affidavit.  (*Id.*)  Additionally, an employee at the criminal court clerk's office told the investigator that she was very familiar with Judge Dalton's signature, and that the signature on the search warrant was Judge Dalton's.  (*Id.*)  There is also a letter from Mr. Gonzalez to Mr. Braden dated December 17, 2008, docketed in Mr. Braden's criminal case. (Crim. Doc. No. 44.)  This letter is heavily annotated by Mr. Braden, and Mr. Braden apparently wanted the Court to see his notes to support his request to represent himself at the time.  (Crim.

Doc. No. 43; Crim. Doc. No. 44 at 1.) In the letter, Mr. Gonzalez relays the information in the investigative report. (Crim. Doc. No. 44 at 3.) Finally, in Mr. Gonzalez's subsequent motion to withdraw, he represented to the Court that an investigator "interviewed the judge that signed the search warrant to verify her signature." (Crim. Doc. No. 39 at 2.) Mr. Braden's far-fetched attempt to undermine the search warrant on this basis through his initial pro se motion fails.

Mr. Braden raises two more challenges the sufficiency of the search warrant that he could have brought on direct appeal. These challenges are also without merit because it would have been futile for counsel to raise these issues in the first place.

First, Mr. Braden seems to argue that Officer West misled Judge Dalton in the warrant affidavit because he did not include that he observed the scene at Mr. Braden's residence before completing the affidavit. (Doc. No. 1-4 at 4, 27, 38.) This is a mischaracterization. While the affidavit begins by reciting information that Officer West received from Officer Wolfe, it goes on to state that Wolfe called his supervisor and other detectives to come to the scene after observing certain inculpatory plain-view evidence. (Doc. No. 1-4 at 76, 81.) The very next sentence reads: "Based on your affiant's training and experience, the white powder substance and white rock substance is cocaine/crack cocaine, a Schedule II controlled substance." (*Id.*) Thus, the text of the affidavit reflects that Officer West saw the plain-view evidence initially observed by Officer Wolfe before he completed the affidavit.

It appears that Mr. Braden may argue, similarly, that Officer Wolfe should have completed the warrant affidavit instead of Officer West because Wolfe made the initial observations. (Doc. No. 1-4 at 27, 30.) But "[i]t is not necessary that the evidence establishing probable cause reflect the direct personal observations" of the individual completing the

affidavit.  *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002) (citing *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)).

For all of these reasons, Mr. Braden's "insufficient search warrant" claim will be denied.

### D.    Insufficient Arrest Warrant

Mr. Braden's "insufficient search warrant" claim will also be denied because it reprises one of his unsupported assertions regarding the search warrant—he asserts that the official whose name is on the arrest warrants did not actually sign them.  (Doc. No. 1 at 5; Doc. No. 1-1 at 23; Doc. No. 1-4 at 6.)  According to Mr. Braden, two deputy clerks named Debora Dyer and Karen Williams[11] forged the signature or initials of Steven Holzapfel, a Davidson County judicial commissioner.  (Doc. No. 1 at 5; Doc. No. 1-4 at 6; Doc. No. 1-5 at 134–35; Doc. No. 108-1 at 29–30.)  Mr. Braden also asserts that trial counsel Mr. Gonzalez was ineffective for failing to investigate this issue.  (Doc. No. 1-1 at 17.)

There are copies of four state arrest warrants for Mr. Braden attached to his initial pro se motion.  These warrants relate to charges for domestic assault, (Doc. No. 1-4 at 58); possession of a firearm with intent to commit a dangerous felony, (*id.* at 52); felony drug offense, (*id.* at 56); and unlawful use of drug paraphernalia (*id.* at 54).  Each warrant is accompanied by an affidavit, and each affidavit is signed by Commissioner Holzapfel.[12]  (*Id.* at 53, 55, 57, 60.)  The assertion that Dyer and Williams forged these signatures is, like his assertion that someone forged Judge Dalton's signature on the search warrant, entirely speculative and conclusory.  The Court gives this dubious assertion no weight.

---

[11]    Mr. Braden refers to these individuals as "Deboro Dyers" and "Karran Williams" in his pro se briefing, (*see, e.g.*, Doc. No. 1 at 5), but the Court refers to them in the manner listed on the arrest warrants attached to the initial pro se motion (*see, e.g.*, Doc. No. 1-4 at 52, 58).

[12]    There are also copies of the four state arrest warrant affidavits that lack Commissioner Holzapfel's signature and appear as though they are computer generated copies of the original documents. (Doc. No. 1-4 at 59, 64, 67, 69.)

Moreover, the Court agrees with the Government's statement in its response to Mr. Braden's supplemental brief: "Even if the state [arrest] warrant[s were] somehow issued in violation of local requirements, nothing in such a violation would prevent federal authorities from indicting, arresting, and convicting [Mr.] Braden of his federal offenses." (Doc. No. 116 at 12). The original indictment in this case charged Mr. Braden with being a felon in possession of firearms and possession with intent to distribute cocaine base and cocaine. (Crim. Doc. No. 1.) The guns and drugs alleged in the indictment were seized pursuant to the search warrant discussed above—not the four arrest warrants at issue here. Mr. Braden's "insufficient arrest warrant" claim, and his related ineffective-assistance claim, are without merit.

### E.    Racial Discrimination in the Selection of the Jury

Next, Mr. Braden asserts that the Court "deleted 4 black Jurors from the panel of 31 jurors with 2 Blacks and all white Jurors from a suburban area." (Doc. No. 1 at 6; Doc. No. 108-1 at 6.) He also asserts that trial counsel Mr. Gonzalez was ineffective for failing to challenge "the all white jury." (Doc. No. 1-1 at 16.) Mr. Braden did not raise any claim based on these assertions at trial, and the Court can find no further explanation or support for them at any point in Mr. Braden's voluminous pleadings. Whether construed as a challenge to the racial composition of the jury panel, or the makeup of the jurors selected for trial, this claim has no basis in the record and will be denied.

A defendant has the "right to a jury elected from a fair cross-section of the community." *Holmes v. United States*, 281 F. App'x 475, 479–80 (6th Cir. 2008) (citing *United States v. Allen*, 160 F.3d 1096, 1101 (6th Cir. 1998)). To make a prima facie showing that this right has been violated, Mr. Braden "must establish that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are

selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process." *Id.* (citing *United States v. Buchanan*, 213 F.3d 302, 308 (6th Cir. 2000)). Here, Mr. Braden may have alleged the first element, *see United States v. Johnson*, 40 F. App'x 93, 96 (6th Cir. 2002) ("[I]t is a given that African-Americans are a distinctive group within the community."), but he does not offer any supporting facts or evidence to satisfy the second or third elements.[13] Thus, Mr. Braden cannot establish a fair cross-section claim.

A defendant also has the right to challenge "a prosecutor's use of peremptory challenges in a racially discriminatory manner." *Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007) (citing *Batson v. Kentucky*, 476 U.S. 79, 106 (1986)). To make "a prima facie case of racial discrimination," Mr. Braden "must demonstrate that: (1) he is a member of a cognizable racial group; and (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race." *United States v. Collins*, 195 F. App'x 419, 422 (citing *Batson*, 476 U.S. at 96). Importantly, where the record "does not indicate the race or ethnicity of any" prospective juror, the Court does not have a basis to conclude that a violation occurred. *Id.*

Here, the voir dire transcript does not indicate the race of any prospective juror. Nor does it establish what, if any, peremptory challenges the Government exercised. The Court excused three potential jurors from the jury pool—one due to the juror's hearing difficulties, (Crim. Doc. No. 123 at 46), another due to the juror's concern that prior experience with law enforcement might affect his decision in the case, (*id.* at 47–48), and a third due to the juror's financial burdens (*id.* at 59). In his affidavit, Mr. Gonzalez states that he "did not keep any notes

---

[13] The Court notes that there is no objective basis in the record for Mr. Braden's statement that the jury panel or jurors selected for trial were all "from a suburban area." For one thing, "suburban" is a nebulous term, and Mr. Braden does not define it. Nonetheless, of the thirty-three prospective jurors, eight reported their place of residence as simply "Nashville." (Crim. Doc. No. 123 at 16–17, 24–25, 27, 29, 47–48.) Four of these eight individuals were selected for trial, and a fifth served as the alternate juror.

regarding the race of panel members but I do not recall having any concerns about black members of the panel being stricken." (Doc. No. 21-3 at 2.) Mr. Gonzalez also states that "Mr. Braden was very involved in exercising peremptory strikes and he insisted on having complete control over which panel members were stricken and which were not." (*Id.*) According to Mr. Gonzalez, Mr. Braden "never raised any concerns with me at trial regarding black members of the panel being inappropriately stricken by the judge or the government." (*Id.*)

Put simply, there is nothing in the record to establish that the Government exercised peremptory challenges in a racially discriminatory manner, or that the Court omitted "black prospective jurors on account of their race" when selecting the jury for trial. *See Jones v. United States*, No. 2:09-CV-009, 2012 WL 256197, at *5 (E.D. Tenn. Jan. 27, 2012) (rejecting a Section 2255 claim based on racial discrimination in jury selection because the movant did not carry his burden of pleading "facts, not conclusory statements unsupported by facts"). Mr. Braden's claim for "racial discrimination in the selection of the jury" is without merit, as is his related ineffective-assistance claim.

###    F.    *Brady* Claim

The Sixth Circuit did not include a *Brady* claim when listing the claims in Mr. Braden's initial pro se motion. *Braden*, No. 14-6395, Doc. No. 11-2 at 1–2. But, while Mr. Braden does not reference it on the form at the beginning of his initial pro se motion, the "table of contents" section for the motion refers to a "Brady Violation." (Doc. No. 1-1 at 4.) Thus, the Court will consider Mr. Braden's *Brady* claim, even though he does not attempt to specifically explain it until about 300 pages into the pleading. (Doc. No. 1-4 at 2.) There, Mr. Braden asserts that the Government committed a *Brady* violation by not producing copies of the original, signed arrest warrants until February 18, 2009—after the hearing on his motion to suppress. (Doc. No. 1-4 at

2, 5, 32; *see also* Doc. No. 51 at 16, 20.) The Court assumes without deciding that *Brady* applies to suppression hearings. *See United States v. Taylor*, 471 F. App'x 499, 520 (6th Cir. 2012) (taking the same approach). Nonetheless, this claim fails.

"A *Brady* violation requires three elements: (1) '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) 'th[e] evidence must have been suppressed by the State, either willfully or inadvertently'; and (3) 'prejudice must have ensued.'" *United States v. Rafidi*, 829 F.3d 437, 447 (6th Cir. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

For the reasons stated above in the discussion of Mr. Braden's "insufficient arrest warrant" claim, Mr. Braden has not satisfied the first and third elements. That is, copies of the signed warrants were not exculpatory, not impeaching, and no prejudice ensued by Mr. Braden receiving them after the suppression hearing. Mr. Braden presents nothing beyond mere speculation that the signatures on the arrest warrant affidavits were forged, and the arrest warrants would have has no bearing on the disposition of Mr. Braden's motion to suppress.

Mr. Braden also has not satisfied the second element. A stamp on the warrants reflects that a "true and exact copy of the original" was obtained on February 9, 2009, (Doc. No. 1-4 at 52, 54, 56, 58), more than a week after the hearing (Crim. Doc. No. 49). The Government sent Mr. Braden copies of the signed warrants on February 18. (Doc. No. 1-4 at 51.) Thus, the warrants were not in the Government's possession before the hearing, and the Government supplied Mr. Braden the warrants soon after receiving them. In these circumstances, the Government did not suppress the signed arrest warrants within the meaning of *Brady*. *See United States v. Pembrook*, 876 F.3d 812, 826 (6th Cir. 2017) (citing *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)) (applying the Ninth Circuit's holding that "a federal

prosecutor had no duty to procure materials prepared for the state courts which were not otherwise under federal control"), *vacated on other grounds*.  Accordingly, Mr. Braden's *Brady* claim is without merit.

### G.    Ineffective Assistance of Trial Counsel

Mr. Braden asserts that Mr. Gonzalez was ineffective in various ways before trial, during trial, and at sentencing.  At the outset, the Court notes that the most efficient disposition of many of these claims involves an assessment of the underlying merits of the issue.  That is because most of underlying issues are clearly baseless, and "counsel 'cannot be ineffective for a failure to raise an issue that lacks merit.'"  *Sheppard v. United States*, No. 17-6178, 2018 WL 1738214, at *1 (6th Cir. Mar. 15, 2018) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Nonetheless, to prevail on his "ineffective assistance of trial counsel" claim, Mr. Braden must establish both that "his counsel provided deficient performance" and "that the deficient performance prejudiced" his defense.  *Sylvester*, 868 F.3d at 510–11 (citing *Strickland*, 466 U.S. at 687).   And "a court deciding an ineffective assistance claim" need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

With these principles in mind, the Court will address each specific assertion of ineffective assistance by trial counsel in turn, including any overlapping claims of appellate ineffectiveness where appropriate.

### 1.    Pretrial Ineffectiveness

Mr. Braden's first asserted ground for relief in the initial pro se motion is the somewhat inscrutable claim that Mr. Gonzalez was "ineffective for not challenging that the Federal Jurisdictional elements is purely Intrastate noneconomic activity for the Federal drug statute in

reference to 21 U.S.C. 841(a)(1) however the state drug charge count (two) poss c/s w/ intent to sale and/or delivery was purely 'local' in nature." (Doc. No. 1 at 4.) As a seemingly relatedly matter, Mr. Braden asserts that Mr. Gonzalez was ineffective for "not challenging the subject matter jurisdiction," (Doc. No. 1-1 at 16), and that the federal government lacked jurisdiction because his case was "local in nature"[14] (*id.* at 23). The Court considers these assertions together and liberally construes them as a claim that Mr. Gonzalez was ineffective for failing to argue that Mr. Braden's three statutes of conviction are unconstitutional. This claim, however, is without merit because the Sixth Circuit has specifically considered and rejected constitutional challenges to all three statutes.

Mr. Braden's statutes of conviction are: 18 U.S.C. § 922(g)(1); 21 U.S.C. § 841(a)(1); and 18 U.S.C. § 924(c)(1)(A). As to the first statute, Mr. Gant incorporated a challenge to its constitutionality in the amended Section 2255 motion. He argued that Section 922(g) "is unconstitutional on the basis that it does not criminalize an offense affecting 'interstate' commerce; therefore, [Mr.] Braden's indictment did not charge an offense which Congress could validly criminalize under the Commerce Clause." *Braden*, No. 14-6395, Doc. No. 11-2 at 2. This Court rejected the claim, and the Sixth Circuit concluded that reasonable jurists would not debate this conclusion because that Court "has specifically upheld § 922(g)(1) as constitutional under the Commerce Clause." *Id.* at 4 (citing *United States v. Henry*, 429 F.3d 603, 618–20 (6th Cir. 2005)).

---

[14]     Mr. Braden also seems to argue that the district court lacked jurisdiction because his federal case was not procedurally connected to his state case in some way. (*See, e.g.*, Doc. No. 1-1 at 28 (asserting that Mr. Gonzalez "failed to obtain[] the Notice for removal from [the] United States Attorney").) To be clear, Mr. Braden's federal criminal case was an entirely separate legal proceeding from his state criminal case. And so, any argument that Mr. Gonzalez was ineffective for failing to address some deficient procedural connection between the two is misguided.

As to the second statute, Section 841(a) also "does not violate the Commerce Clause" because it "'addresses a clearly commercial activity that has long been within federal power to regulate.'" *United States v. Collier*, 246 F. App'x 321, 337 (6th Cir. 2007) (quoting *United States v. Tucker*, 90 F.3d 1135, 1140 (6th Cir. 1996)). Congress has "the authority to criminalize" the sale of controlled substances, the Sixth Circuit explains, even if they originate within a state and are intended to be sold within that state. *Id.* Similarly, as to the third statute, the Sixth Circuit has explained that "Section 924(c) is based on the underlying offense of drug trafficking[,]" and "Congress is permitted to regulate drug trafficking and related crimes that occur solely intrastate under the Commerce Clause." *United States v. Winston*, 55 F. App'x 289, 302 (6th Cir. 2003) (citing *United States v. Brown*, 276 F.3d 211, 214–15 (6th Cir. 2002)).

Accordingly, Mr. Gonzalez was not ineffective for failing to raise a constitutional challenge to Mr. Braden's statutes of conviction because any such challenge would have been unsuccessful.

Next, Mr. Braden asserts that Mr. Gonzalez was ineffective for failing to challenge a violation of the Speedy Trial Act. (Doc. No. 1-1 at 17.) As with Mr. Braden's claim for "racial discrimination in the selection of the jury," the Court cannot discern any explanation or support for this claim throughout Mr. Braden's initial pro se motion or his subsequent briefing. And in this case, Mr. Braden does not even attempt to support this claim with a factual assertion of any kind—even one that has no basis in the record. In short, it is a claim of ineffectiveness based on a bare legal conclusion. Because Mr. Braden fails to provide any factual support for this claim, it will be denied as insufficiently pled under Rule 2 of the Section 2255 Rules. *See Robinson v. United States*, 582 F. Supp. 2d 919, 926 (N.D. Ohio 2008) (collecting cases for the proposition

that allegations "devoid of any factual support" are not sufficient "to support a request for relief under § 2255").

Mr. Braden next asserts that Mr. Gonzalez was ineffective for failing to object to the filing of the first superseding indictment. (Doc. No. 1-1 at 17.) Count 1 of the original indictment charged Mr. Braden with being a felon in possession of firearms, and Count 2 charged him with possession with intent to distribute controlled substances. The first superseding indictment essentially added a charge for possessing the firearms from Count 1 in furtherance of the drug trafficking activity in Count 2. Mr. Braden seems to assert that the addition of this charge was malicious. (Doc. No. 1-1 at 24.) "The Due Process Clause prohibits vindictive prosecution, but 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring . . . generally rests entirely in his discretion.'" *Miller v. Winn*, No. 18-1540, 2018 WL 5849899, at *6 (6th Cir. Aug. 27, 2018) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). "[A] 'presumption of regularity supports [prosecutors'] prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties.'" *United States v. Merriweather*, 728 F. App'x 498, 507 (6th Cir. 2018) (quoting *Armstrong*, 517 U.S. at 464). Here, Mr. Braden has not presented any argument—much less any evidence—that the Government's decision to prosecute him or charge him with an additional crime was based on a constitutionally impermissible factor. His claim that Mr. Gonzalez was ineffective for failing to object to the first superseding indictment, therefore, is without merit.

Finally, as discussed in regard to Mr. Braden's "illegal search and seizure" claim, Mr. Braden asserts that Mr. Gonzalez was ineffective for failing to file pretrial motions. (Doc. No. 1-

1 at 16.) The Court reiterates that Mr. Gonzalez was not ineffective for failing to file a motion to suppress because he, in fact, filed such a motion. But that is not the only pretrial motion that, according to Mr. Braden, should have been filed.

Mr. Braden seems to assert that Mr. Gonzalez was ineffective for failing to file a pretrial motion to dismiss the indictment. (*See, e.g.*, Doc. No. 1-4 at 22.) As explained below, this assertion appears to be based on three different alleged deficiencies in the indictments. Mr. Gonzalez was not ineffective for failing to file pretrial motions based on these deficiencies, however, because Mr. Braden has not demonstrated that any such motion would have been successful.

First, Mr. Braden appears to argue that Mr. Gonzalez should have failed a motion to dismiss the indictment for lack of probable cause. (*See* Doc. No. 1-4 at 22; Doc. No. 108-1 at 27.) But an "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . ." *United States v. Sims-Robertson*, 16 F.3d 1223, 1994 WL 12212, at *5 (6th Cir. Jan. 18, 1994) (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974)). Additionally, the jury found Mr. Braden guilty on all three charges, which demonstrates that there was probable cause to indict Mr. Braden on all three charges. *See United States v. Ellis*, 626 F. App'x 148, 155 (6th Cir. 2015) (citing *United States v. Mechanik*, 475 U.S. 66, 67 (1986)). Accordingly, Mr. Braden has not shown that this motion would have had merit.

Second, Mr. Braden asserts that the indictments did not include any facts and charged him using only citations to statutes and references to approximate dates. (Doc. No. 1-1 at 22, 40.) This is simply not true—all three indictments include references to specific firearms and a specific amount of drugs. Moreover, "reference to the appropriate section of the statute provides

sufficient notice to the defendant of the charged offense to meet constitutional standards." *United States v. Knight*, 63 F. App'x 870, 872 (6th Cir. 2003) (citing *United States v. Martinez*, 981 F.2d 867, 871–72 (6th Cir. 1992)). Thus, if Mr. Gonzalez had filed a motion to dismiss the indictment on this basis, it would have been denied.

Third, Mr. Braden seems to assert that the second superseding indictment is defective because "the 12 jurors including the foreman are not part of the grand jury hearing (record)." (Doc. No. 1-1 at 40.) This assertion is not accompanied by any further explanation. The Court notes that it has reviewed the sealed second superseding indictment, and it is signed by the grand jury foreperson and reflects that it is a true bill. Thus, the Court has no basis to conclude that the second superseding indictment is defective due to some kind of uncertainty regarding the grand jurors. *See United States v. Demarey*, 81 F.3d 161, 1996 WL 145870, at *2 (6th Cir. Mar. 29 1996) ("is signed by the grand jury foreperson and indicates that it is a true bill; that is, a quorum of grand jurors agreed to indict.") Because Mr. Braden has not demonstrated that a pretrial motion targeting this uncertain deficiency would have had merit, any related assertions of ineffective by Mr. Gonzalez is without merit.

For all of these reasons, Mr. Braden's claim that Mr. Gonzalez was ineffective for failing to file pretrial motions will be denied.

### 2. Ineffectiveness During Trial

Mr. Braden raises several complaints regarding his trial counsel and appellate counsel's failure to "address the elements" of his offenses of conviction. For instance, Mr. Braden asserts that Mr. Gonzalez was ineffective for failing to "address[] the elements of 924(c) count." (Doc. No. 1 at 6.) He also asserts that Mr. Gonzalez was ineffective for failing to "address the elements of 21 u.s.c. 841(a)(1), 18 u.s.c. 922(g)(1), and 18 u.s.c. 924(c)(1)(A)(i)." (Doc. No. 1-1

at 16).  And as to appellate counsel, he asserts that Mr. Houston was ineffective for failing to raise "all the issues pertaining to the . . . elements of the 922(g)(1), 841(a)(1), and the 924(c) count."  (Doc. No. 1 at 6.)  Together, the Court construes these assertions as a claim that Mr. Gonzalez was ineffective during trial in arguing the verbal motion for judgment of acquittal,[15] and that Mr. Houston was ineffective for failing to raise Mr. Gonzalez's ineffectiveness on appeal.

Under Rule 29(a) of the Federal Rule of Criminal Procedure, a defendant may seek "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction," either "[a]fter the government closes its evidence or after the close of all the evidence."  "A defendant bringing such a challenge bears a 'very heavy burden.'"  *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).  "'In reviewing challenges regarding the sufficiency of the evidence presented to the jury,'" the Court is "'limited to ascertaining whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Davis*, 577 F.3d 660, 671 (6th Cir. 2009) (quoting *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000)).

Here, Mr. Gonzalez brought a verbal motion for judgment of acquittal as to all three counts at the close of the Government's case.  (Crim. Doc. No. 121 at 13–14.)  Thus, Mr. Braden is effectively attempting to use "an ineffective assistance claim as a vehicle to challenge"

---

[15]     This construction is consistent with the ensuing briefing.  In his affidavit, Mr. Gonzalez states that he "do[es] not know what Mr. Braden means by 'not addressing the elements of 924(c)' unless he means in my closing argument."  (Doc. No. 21-3 at 3.)  In one of Mr. Braden's replies in support of his initial pro se motion, Mr. Braden responds to this statement and states that he is referring to Mr. Gonzalez's verbal motion for judgment of acquittal.  (Doc. No. 51 at 6.)  Mr. Braden goes on to reference Mr. Gonzalez's argument on this motion regarding all three counts.  (*Id.* at 6–7.)

whether the Government put on evidence sufficient to sustain a conviction on all three counts, before accounting for the testimony of defense witness Keyiona Oatis.[16]  *See United States v. Brown*, No. 94-3682, 1995 WL 313728, at *2 (6th Cir. May 22, 1995); (*see also* Doc. No. 1-5 at 128 ("Defense witness Keyiona Oatis was not a government witness to provide evidence of drug distribution and carrying firearms during and in relation to a drug crime.").)

In arguing the motion for a judgment of acquittal, Mr. Gonzalez first addressed an element necessary to convict Mr. Braden on both Count 1 and Count 3—possession of the firearms.  (Crim. Doc. No. 121 at 14.)  Specifically, Mr. Gonzalez recognized that the recordings of Mr. Braden's jail calls were an obstacle on this point, and attempted to diminish their impact by arguing that Mr. Braden's statements of ownership were "just street slang."  (*Id.*)  Recognizing that "intent to distribute" was an element necessary to convict Mr. Braden on Count 2, Mr. Gonzalez argued that the Government had not shown beyond a "mere inference" that Mr. Braden intended to sell the drugs seized from his residence because the drug quantity was "relatively small," there was no stash of money found in the residence, and it is not illegal to possess plastic bags with the corners cut off.  (*Id.*)  And finally, Mr. Gonzalez argued that there was insufficient evidence to convict on Count 3 because the Government did not establish any "connection between the firearms and the drugs, other than the fact that they were both found in the same room."  (*Id.* at 15.)  This fact, Mr. Gonzalez argued, did not lend itself to the inference that the guns are drugs were connected because Mr. Braden lived in just "one large room."  (*Id.*)

---

[16]     Mr. Braden also seems to assert that Mr. Gonzalez was ineffective in failing to argue that the Government did not prove the prior felony necessary to convict him on Count 1.  (Doc. No. 1-4 at 23.)  The Government, however, put on proof of his prior aggravated assault conviction, (Crim. Doc. No. 123 at 86–89); not, as he claims, a "dismissed simple assault" charge or a "state drug conviction" charge.  (Doc. No. 1-4 at 23).  Mr. Braden has not identified any basis on which Mr. Gonzalez could have successfully challenged the proof of his prior felony aggravated assault conviction.  Any assertion of ineffectiveness in this regard is without merit.

Mr. Gonzalez was not deficient in arguing the motion for a judgment of acquittal because he, in fact, attacked the sufficiency of the Government's proof on each count. Mr. Braden has not pointed to any argument Mr. Gonzalez could have made that would have overcome the "very heavy burden" of showing that the evidence was insufficient to sustain a conviction at that point in the proceedings. "Although the motion was ultimately unsuccessful, counsel cannot de deemed to have been deficient, as he did what [Mr. Braden] now claims that he should have done." *Evans v. United States*, No. 1:13-cv-82, 2016 WL 1180195, at *2 (E.D. Tenn. Mar. 24, 2016). Accordingly, Mr. Braden has not demonstrated that Mr. Gonzalez was ineffective for failing to "address the elements" of Mr. Braden's statutes of conviction, or that Mr. Houston was ineffective for failing to raise this issue on appeal.

Mr. Braden presents a variant of this claim within the attachments to his initial pro se motion, arguing that Mr. Gonzalez was ineffective for failing to "address the elements" of Count 3 "*to the jury*." (Doc. No. 1-2 at 68, 88 (emphasis added).) The Court construes this assertion as a claim that Mr. Gonzalez was ineffective during his closing argument regarding Count 3. Mr. Braden also seems to assert that Mr. Houston was ineffective for failing to raise this issue on appeal. (Doc. No. 1-2 at 88.)

"'[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage.'" *Robinson v. United States*, 625 F. App'x 721, 725 (6th Cir. 2015) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)). Here, Mr. Gonzalez swears in his affidavit that he made a strategic decision not to draw attention to the firearms because "[t]here was no proof that was even remotely favorable on the weapons count." (Doc. No. 21-3 at 2.) Mr. Braden has identified another strategy during closing argument with a

reasonable probability of resulting in a different outcome. Thus, Mr. Braden has not demonstrated deficiency or prejudice as to Mr. Gonzalez's strategic decision not to focus on firearms during closing argument, and his claim that Mr. Gonzalez was ineffective for failing to "address the elements" of Count 3 to the jury is without merit. Any related claim of ineffectiveness against Mr. Houston is without merit for this same reason.

Next, Mr. Braden asserts that Mr. Gonzalez provided ineffective assistance by introducing prejudicial testimony. (Doc. No. 1 at 6.) The only defense witness at trial was Keyiona Oatis. (Crim. Doc. No. 121 at 17.) Thus, the Court construes this assertion as a claim that Mr. Gonzalez was ineffective for eliciting prejudicial testimony from Ms. Oatis.

In his affidavit, Mr. Gonzalez presents specific facts regarding the decision to call Ms. Oatis as a defense witness. There, Mr. Gonzalez swears that he interviewed Ms. Oatis "months before trial" and determined that he "did not want to call her to testify." (Doc. No. 21-3 at 2.) He specifically attests as follows:

> [A]fter the government closed its proof, the court took a recess and I went back to the lockup behind the courtroom and tried to talk Mr. Braden out of his insistence that she be called as a witness, telling him that I did not expect her testimony to be favorable and that once she took the stand, I would be limited in how much I could control her testimony and that the government would be able to cross examine her. Mr. Braden absolutely insisted and demanded that I call her as a witness over my warnings.

(*Id.* at 3.) In Mr. Braden's reply in support of his pro se supplemental brief—an unsworn document filed almost six years after Mr. Gonzalez's affidavit—Mr. Braden asserts for the first time that "this meeting never happened." (Doc. No. 118 at 10.) Mr. Braden had several opportunities to rebut Mr. Gonzalez's affidavit before this time, but did not do so. In these circumstances, the Court credits Mr. Gonzalez's detailed affidavit, and accepts his assertion that Mr. Braden insisted that Ms. Oatis be called as a witness. *See Thomas v. United States*, 849 F.3d

669, 681 (6th Cir. 2017) (citing *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)) ("Bald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing.").

Against this background, Mr. Braden now seems to assert that Mr. Gonzalez's questions were deliberately designed to help the Government prove that Mr. Braden possessed the firearms alleged in the indictments. (Doc. No. 1-2 at 78, 84–85.) The Court gives this baseless assertion no weight. As the Supreme Court explained, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

As best as the Court can glean from Mr. Braden's arguments, Mr. Braden expected Ms. Oatis to testify that the firearms at issue belonged to either her or her uncle, not Mr. Braden. (Doc. No. 1-1 at 33, 35; Doc. No. 1-2 at 77–78, 82, 84.) According to Mr. Braden, he gave Mr. Gonzalez a letter Ms. Oatis sent to him for impeachment purposes "just in case [Ms. Oatis] testified that the firearms did not belong to her uncle." (Doc. No. 1-2 at 84.) When Mr. Gonzalez questioned Ms. Oatis regarding the ownership of the guns found in the residence, she testified that only "some" of the guns belonged to her uncle. (Crim. Doc. No. 121 at 19, 24.) And so, Mr. Gonzalez used the letter to attempt to impeach this testimony. (*Id.* at 24–25.) Ms. Oatis's ensuing testimony did not, apparently, go as Mr. Braden expected. But it is clear that Mr. Gonzalez's questioning was not "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, and the Court simply cannot conclude that Mr. Gonzalez was ineffective for calling and questioning Ms. Oatis as instructed by Mr. Braden. *See Coleman v.*

*Mitchell*, 244 F.3d 533, 545–46 (6th Cir. 2001) (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)) ("An attorney's conduct is not deficient simply for following his client's instructions."). Mr. Braden's claim that Mr. Gonzalez provided ineffective assistance by introducing prejudicial testimony is without merit.

Finally, Mr. Braden asserts that Mr. Gonzalez failed to "object to rule 403 and 404(b)." (Doc. No. 1-1 at 15.) This is an apparent reference to Ms. Oatis's testimony regarding Mr. Braden's prior instances of domestic violence, (Doc. No. 1-2 at 75–78, 83), which included details about Mr. Braden's behavior leading to the stabbing on January 16 (Doc. No. 1-2 at 76, 82–84). As part of this claim, Mr. Braden asserts that Mr. Gonzalez should have requested a "more detailed limit[ing] instruction" regarding these prior acts. (Doc. No. 1-2 at 75.)

The Sixth Circuit effectively rejected these underlying claims on direct appeal. There, Mr. Braden relied on "Federal Rules of Evidence 403 and 404(b)" to assert that that "the district court should have excluded Oatis's trial testimony (1) identifying a firearm recovered from his residence as one of the guns that he had pointed at her on prior occasions and (2) describing the circumstances leading up to the stabbing." (Crim. Doc. No. 130 at 4.) Put another way, Mr. Braden argued that Ms. Oatis's "testimony regarding his alleged violent acts or threats against [her] was more prejudicial than probative and should not have been allowed into evidence absent a limiting instruction." (*Id.* at 2.) The Sixth Circuit essentially concluded that any error in admitting this evidence under Rule 404(b) was harmless because "'the properly admitted evidence of [Mr. Braden's] guilt [was] overwhelming.'" (*Id.* (quoting *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008).) Mr. Braden has not identified any exceptional circumstances to justify relitigating this conclusion here. *See Jones*, 178 F.3d at 796. That is true even though Mr. Braden now attempts to challenge these issues "in the guise of ineffective assistance of

counsel." *See Clemons v. United States*, No. 3:01-cv-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)) ("[A movant] cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal."). Accordingly, Mr. Braden's assertion that Mr. Gonzalez was ineffective for failing to "object to rule 403 and 404(b)" is without merit.

### 3. Ineffectiveness at Sentencing

As to sentencing issues, Mr. Braden presents broad assertions of ineffectiveness by trial counsel, Mr. Gonzalez, and direct appeal counsel, Mr. Houston. That is, Mr. Braden generally asserts that Mr. Gonzalez was ineffective for failing to object to the Pre-Sentence Report ("PSR"). (Doc. No. 1-1 at 16.) And he similarly asserts that Mr. Houston failed to address "the illegal sentence imposed by the district Judge adopting the PSR." (Doc. No. 1 at 6.) As displayed below, the Court has liberally construed Mr. Braden's initial pro se motion to identify every non-frivolous claim of sentencing error at trial. In considering these issues under the broad umbrella of Mr. Braden's ineffective-assistance claim, the Court concludes that none of them have merit.

The Court begins by addressing Mr. Braden's designation as an Armed Career Criminal under the ACCA. Mr. Braden asserts that Mr. Gonzalez was ineffective in failing to challenge this designation. (Doc. No. 1-3 at 72; Doc. No. 1-4 at 22; Doc. No. 1-5 at 128.) The Sixth Circuit, however, resolved this claim against Mr. Braden when, on appeal, it considered whether he remained an Armed Career Criminal after the Supreme Court's decision in *Johnson v. United States*. *Braden*, 817 F.3d at 929. There, appointed counsel Mr. Schad did not dispute that Mr. Braden's robbery conviction was a predicate offense under the ACCA, but argued that "his two prior convictions for aggravated assault" were not. *Id.* at 931 & n.2. The Sixth Circuit rejected

this argument, holding that *Johnson* did not affect Mr. Braden's "status as an Armed Career Criminal" because his aggravated assault convictions qualified as violent felonies under the ACCA's "force" clause. *Id.* at 933–34 (citations omitted).

Undeterred, Mr. Braden attempts to challenge this designation on remand by arguing that Mr. Schad was ineffective in litigating this claim on appeal. (Doc. No. 74 at 4–8.) To the extent the Court can entertain this claim, it is without merit. Mr. Braden argues that Mr. Schad erred by failing to cite to "the controlling case and authority in *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011)." (Doc. No. 74 at 4.) *McMurray* has since been overruled, so no prejudice ensued. *See Dillard v. United States*, 768 F. App'x 480, 487 (6th Cir. 2019) (recognizing that *McMurray* was overruled by *United States v. Verweibe*, 874 F.3d 258 (6th Cir. 2017)). Moreover, Mr. Schad was not deficient because *McMurray* is readily distinguishable from this case. True enough, both *McMurray* and *Braden* applied the "modified categorical approach" to Tennessee's aggravated assault statute and came to different conclusions. *McMurray*, 653 F.3d at 377–82; *Braden*, 817 F.3d at 932–34. Importantly, however, the record before the *McMurray* Court did "not include the charging documents," 653 F.3d at 378, while the record before the *Braden* Court included the relevant indictments, 817 F.3d at 926. And in this case, the relevant indictments "demonstrate that Mr. Braden *necessarily* pled guilty" to "violent felonies under the ACCA's 'force' clause." *Braden*, 817 F.3d at 933 (emphasis added and citations omitted).

Mr. Braden presents two more meritless issues regarding his Armed Career Criminal designation. First, Mr. Braden seems to assert that Mr. Gonzalez was ineffective for failing to object that his robbery conviction is not a predicate offense. (Doc. No. 1-3 at 68; Doc. No. 74 at 6.) But the Sixth Circuit holds that Tennessee robbery is categorically a violent felony. *Braden*, No. 14-6395, Doc. No. 11-2 at 5 (citing *United States v. Mitchell*, 743 1054, 1058–63 (6th Cir.

2014)).  This remains the case after *Johnson*.  *See United States v. Kemmerling*, 612 F. App'x 373, 376 (6th Cir. 2015) ("*Mitchell*'s holding that Tenn. Code Ann. § 39-13-301 qualifies as an ACCA predicate offense under the 'use of physical force' clause is not affected by *Johnson*[.]").

Second, Mr. Braden seems to assert that trial and appellate counsel were ineffective for failing to argue that his two aggravated assault convictions should count as only one predicate offense under the ACCA.  (*See* Doc. No. 1-3 at 71–72.)  Specifically, Mr. Braden seems to argue that there was no intervening arrest and the sentences were imposed on the same day.  (*Id.*)  This argument confuses Mr. Braden's designation as an Armed Career Criminal with his designation as a Career Offender under the Guidelines.  As to the Guidelines, Amendment 709 to U.S.S.G. § 4A1.1, which took effect on November 1, 2007, clarified "that if there is no intervening arrest, prior sentences are counted separately unless . . . the sentences were imposed on the same day." *Snider v. United States*, 908 F.3d 183, 186 n.2 (6th Cir. 2018) (internal citation and quotation marks omitted).  The ACCA, however, "focus[es] on the defendant's conduct: it asks courts to determine whether prior offenses were 'committed' on different occasions."  *United States v. King*, 853 F.3d 267, 273 (6th Cir. 2017) (quoting 18 U.S.C. § 924(e)(1)).  These standards are distinct, and Mr. Braden recognizes that his two prior aggravated assault offenses were committed on different occasions.  (Doc. No. 1-3 at 71.)  Thus, Mr. Braden's attorneys were not ineffective for failing to object to his designation as an Armed Career Criminal based on the Sentencing Guideline's standard for counting prior felony convictions.  *See United States v. Brown*, 727 F. App'x 126, 131 (6th Cir. 2018) ("Whether [the defendant's] prior offenses were committed on different occasions is far from the dispositive, or even relevant, question" of whether his prior convictions "are adequate predicate offenses for the career offender enhancement" under the Guidelines.).

For all of these reasons, Mr. Braden has not demonstrated that Mr. Gonzalez, Mr. Houston, or Mr. Schad were ineffective in regard to his designation as an Armed Career Criminal under the ACCA.

Next, Mr. Braden asserts a companion claim that Mr. Gonzalez was ineffective in failing to object to his designation as a Career Offender under the Sentencing Guidelines. (Doc. No. 1-3 at 47, 51; Doc. No. 1-4 at 22; Doc. No. 1-5 at 128.) He seems to argue that his prior convictions do not count as predicate offenses for purposes of the Career Offender enhancement. (Doc. No. 1-3 at 51.) This claim requires little discussion.

"The guidelines define a career offender as having at least two prior felony convictions for crimes of violence or controlled substance offenses." *Snider*, 908 F.3d at 185 (citing U.S.S.G. § 4B1.1(a)). Additionally, "[a] 'crime of violence' under the career-offender provision is interpreted identically to a 'violent felony' under [the] ACCA." *United States v. Johnson*, 707 F.3d 655, 659 n.2 (6th Cir. 2013) (quoting *United States v. Young*, 580 F.3d 373, 379 n.5 (6th Cir. 2009)). Mr. Braden's PSR identified three predicate offenses for his Career Offender designation: the robbery discussed above; one of the aggravated assaults discussed above; and a conviction for the sale of cocaine. (Doc. No. 39-1 at 12, ¶ 35.) Thus, for the same reasons that the Court determined Mr. Braden's robbery and aggravated assault convictions to be violent felonies under the ACCA, these two convictions also count as crimes of violence under the Guidelines. Moreover, the third conviction clearly qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b)). Accordingly, Mr. Braden was correctly sentenced as a Career Offender, and his attorneys were not ineffective in failing to raise this claim.

As a related matter, the Government relied on this same conviction for the sale of cocaine to allege that Mr. Braden was "previously convicted of one felony drug offense" in its 851

Information.  (Crim. Doc. No. 83.)  Mr. Braden seems to assert that this conviction did not constitute a "felony drug offense," required to increase his statutory penalty for Count 2.  (Doc. No. 1-3 at 53.)  "Title 21 defines 'felony drug offense' as 'an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances.'"  *United States v. Soto*, 8 F. App'x 535, 540 (6th Cir. 2001) (quoting 21 U.S.C. § 802(44)).  This definition is to be read broadly.  *Id.* at 541.  Mr. Braden's 1995 Tennessee conviction clearly fits within this definition, and Mr. Braden does not explain how his Mr. Gonzalez could have argued otherwise.  Accordingly, any claim of ineffectiveness based on this issue is without merit.

Mr. Braden's next claim involves another issue resolved by the Sixth Circuit on appeal. He seems to assert that Mr. Gonzalez was ineffective for failing to raise an objection that the second superseding indictment should have alleged certain prior convictions—both the prior conviction listed in the 851 Information, and the prior convictions used to designate him as an Armed Career Criminal under the ACCA.  (Doc. No. 1-1 at 16; Doc. No. 1-2 at 69; Doc. No. 1-3 at 55, 72–73.)

In the amended Section 2255 motion, however, Mr. Gant asserted that Mr. "Braden was improperly sentenced under the [ACCA] because his prior convictions were not found by a grand jury, alleged in the indictment, or found by the jury beyond a reasonable doubt."  *Braden*, No. 14-6395, Doc. No. 11-2 at 2.  He also asserted that "trial counsel was ineffective for failing to raise arguments relating to . . . the ACCA."  *Id.*  This Court rejected these claims, and, in denying a COA, the Sixth Circuit found that reasonable jurists would not debate this conclusion.  *Id.* at 2, 4.  In doing so, the Sixth Circuit specifically noted the Supreme Court's holding that "a court

53

may enhance a defendant's sentence on the basis of a prior conviction without the prior conviction being found by a jury beyond a reasonable doubt." *Id.* at 4 (citing *Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013)). This rationale applies with equal force to a prior conviction alleged in an 851 Information. *See United States v. Zolicoffer*, 570 F. App'x 540, 544 (6th Cir. 2014). Accordingly, Mr. Braden's assertion that Mr. Gonzalez was ineffective for failing to object to the PSR on this basis is without merit.

Finally, the Court briefly addresses Mr. Braden's isolated suggestion that his sentence may violate the Eighth Amendment's prohibition on cruel and unusual punishment. (Doc. No. 1-3 at 47.) "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Collier*, 246 F. App'x 321, 338 (6th Cir. 2007) (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)). Here, the Court sentenced Mr. Braden to serve a total term of 45 years' imprisonment, (Crim. Doc. No. 114 at 3), and his statutory maximum was life imprisonment. Thus, to the extent that Mr. Braden asserts that his attorneys were ineffective for failing to challenge his sentence on Eighth Amendment grounds, his claim is without merit. *See United States v. Gerick*, 568 F. App'x 405, 414 (6th Cir. 2014) (quoting *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004)) ("[T]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment.").

Mr. Braden has not demonstrated that Mr. Gonzalez was ineffective before trial, during trial, or after trial. For all of the reasons given above, Mr. Braden's "ineffective assistance of trial counsel" claim will be denied.

## H. Ineffective Assistance of Appellate Counsel

Through Mr. Braden's final claim, he asserts that appellate counsel Mr. Houston provided ineffective assistance in several ways. As a general matter, "the decision of which among the possible claims to pursue on appeal is entrusted to counsel's professional judgment, which is presumed to be effective unless the ignored issues are clearly stronger than those presented." *Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. 2014) (footnote omitted) (citing *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)). Put another way, "'the hallmark of effective appellate advocacy'" is "'selecting,' 'winnowing,' and 'focusing' arguments." *Id.* at 945 (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

Mr. Houston raised two claims on direct appeal: a claim that Mr. Braden's motion to suppress should have been granted based on an illegal search of his residence, and a claim that Ms. Oatis's trial testimony regarding Mr. Braden's violent acts should have been excluded under Federal Rules of Evidence 403 and 404(b). Indeed, Mr. Braden devotes most of his attention throughout his pleadings to the same illegal search and seizure claim litigated on direct appeal. Mr. Houston's decision to focus on this claim was a sound expression of professional judgment, as it the type of potentially dispositive issue that warrants attention on appeal. *See Jones*, 463 U.S. at 746 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Nearly all of Mr. Braden's specific assertions of appellate ineffectiveness have been addressed above—either because they are connected to Mr. Braden's "illegal search and seizure" claims, or because they overlap with Mr. Braden's stand-alone claims of ineffectiveness regarding Mr. Gonzalez. Mr. Braden has not demonstrated that he is entitled to relief on any of

these bases, in large part, because many of the underlying issues are without merit.  *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

One specific assertion of appellate ineffectiveness remains.  Mr. Braden seems to assert that Mr. Houston was ineffective for failing to argue that he should not have received a mandatory consecutive sentence for his conviction in Count 3, possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  (Doc. No. 1-1 at 16; Doc. No. 1-3 at 47.)  This claim requires some background explanation.

In March 2010—after Mr. Houston submitted the direct appeal brief, but before Mr. Braden's appeal was decided—the Sixth Circuit issued its decision in *United States v. Almany*, holding that Section 924(c)'s "five year mandatory minimum was not a mandatory *consecutive* sentence if the underlying crime required a higher statutory mandatory minimum."  *United States v. Logan*, 529 F. App'x 477, 479 (6th Cir. 2013) (emphasis added) (citing *United States v. Almany*, 598 F.3d 238, 242 (6th Cir. 2010)).  The record reflects that Mr. Braden communicated with Mr. Houston while his appeal was pending about Mr. Braden's interest in raising an issue based on *Almany*.  (Doc. No. 1-3 at 103.)  Thus, the Court construes Mr. Braden's assertion as a claim that Mr. Houston was ineffective for failing to file supplemental briefing seeking resentencing under *Almany* while the appeal was pending.

Assuming that Mr. Houston was deficient in this regard, Mr. Braden still cannot prevail on this claim because he did not suffer any prejudice.  In November 2010—less than three weeks after the Sixth Circuit affirmed Mr. Braden's convictions—the Supreme Court rejected *Almany*'s reasoning, vacated the Sixth Circuit's judgment, and remanded.  *United States v. Lawrence*, 735 F.3d 385, 409 (6th Cir. 2013) (citing *Abbott v. United States*, 562 U.S. 8 (2010)).  "On remand in

*Almany*, [the Sixth Circuit] restored the sentence that had been originally imposed under § 924(c)." *Id.* (citing *United States v. Almany*, 626 F.3d 901 (6th Cir. 2010)).  Accordingly, even if Mr. Braden had been resentenced on the basis of *Almany*, the new sentence would not have remained in effect after *Abbott*.  *See United States v. Beals*, 698 F.3d 248, 272–73 (6th Cir. 2013) (rejecting Ex Post Facto and Due Process arguments that an *Almany* resentencing should remain in effect after *Abbott*).

Moreover, due to the compressed timeline of relevant events in this case, this Court could not have resentenced Mr. Braden while *Almany* was still good law.  The Sixth Circuit affirmed Mr. Braden's convictions on October 28, 2010, (Crim. Doc. No. 130), but the mandate did not issue until November 19, 2010 (Crim. Doc. No. 131)—four days after *Abbott* was decided.  562 U.S. 8.  Mr. Braden cannot demonstrate the prejudice necessary to prevail on this assertion of appellate ineffectiveness.

Mr. Braden's "ineffective assistance of appellate counsel" claim will be denied.

## V.     Conclusion

For these reasons, Mr. Braden is not entitled to an evidentiary hearing, and the arguments in his initial pro se motion do not entitle him to relief.  Accordingly, Mr. Braden's initial pro se motion will be denied and this action will be dismissed.

Rule 11(a) of the Rules Governing Section 2255 Cases requires that a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the "applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, having considered all of Mr. Braden's arguments, the Court concludes that he has not satisfied this standard and will therefore deny a certificate of appealability.

The Court will enter an appropriate Order.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE